IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE ELLIS JOHNSON,

    Petitioner,               No. CIV-S-10-0178 WBS CMK (TEMP) P

  vs.

M. MARTEL,

    Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus challenging his 2002 Sacramento County conviction. Respondent has filed a motion to dismiss on the ground that the petition is not timely.

I. Procedural Background

        On August 16, 2002, petitioner was sentenced to a determinate term of twenty-eight year plus three indeterminate terms of fifteen years to life. Lodged Document (Lodg. Doc.) 1.

        Petitioner appealed his conviction to the state Court of Appeal. On March 25, 2004, that court modified the judgment on one of the counts and directed the trial court to correct the abstract of judgment, but affirmed the convictions in all other respects. Lodg,. Doc. 2 at 42-43. On April 22 and June 18, 2004, the superior court modified the judgment. Lodg. Doc. 1.

        Petitioner sought review from the California Supreme Court, which denied his petition on June 9, 2004.

        Counsel for petitioner filed a petition for a writ of habeas corpus in Sacramento

1

County Superior Court on August 2, 2004.  Lodg. Doc. 5.  That action was stayed pending the California Supreme Court's decision in People v. Black, 35 Cal.4th 1238 (2005) and then denied on September 1, 2005 after the stay was lifted.  Lodg. Doc. 6.

Petitioner next sought collateral review on June 10, 2009[1] by filing a petition for a writ of habeas corpus in the California Supreme Court.  Lodg. Doc. 7.  That court denied the writ on November 19, 2009.  Lodg. Doc. 8.

The instant petition was filed on January 16, 2010.

II. The Statute Of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA)contains a statute of limitations for filing a federal habeas petition:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

---

[1] Under the prison mailbox rule, the court relies on the date petitioner signed the petition. Houston v. Lack, 487 U.S. 266, 276 (1988).

28 U.S.C. § 2244.

A conviction is final for purposes of the AEDPA statute of limitations at the expiration of the ninety day period for seeking certiorari. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).

The California Supreme Court denied review on June 9, 2004. The ninety day period for seeking certiorari began running on June 10, 2004 and expired on September 8, 2004. Accordingly the statute of limitations began to run on September 9, 2004.[2] Thorson v. Palmer, 479 F.3d 643, 645 (9th Cir. 2007) (applying Fed. R. Civ. P. 6(a) to AEDPA calculations; the rule excludes the day from which the period begins to run from the calculation of the time).

The statute of limitations is tolled during the pendency of any "properly filed" state collateral attack on the judgment. Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999). In this case, however, petitioner filed his initial habeas petition before the statute began to run. In Tillema v. Long, 253 F.3d 494, 502 (9th Cir. 2001), the Ninth Circuit found a state petition filed before the statute of limitations had begun to run but decided after the limitations period began had the effect of tolling time. See also Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) ("a state habeas petition filed *before* the AEDPA statute of limitations begins to run tolls the limitations period"); Sorce v. Artuz, 73 F.Supp.2d 292 (E.D.N.Y. 1999) (state petition pending at time limitations period began to run delayed start until state court issued decision). Accordingly, the statute of limitations was tolled until the superior court's decision on September 1, 2005, began to run again on September 2, 2005, and expired on September 2, 2006.

---

[2] In Burton v. Stewart, 549 U.S. 147, 156-157 (2007), the Supreme Court noted that "final judgment" for purpose of the AEDPA statute of limitations is the sentence because "[t]he sentence is the judgment." In this case, the judgment was not final until the sentence was modified in accordance with the Court of Appeal's direction. He did not appeal from that modification, so if it is deemed to be the judgment, it was final when the sixty day period for taking an appeal from that judgment expired, on August 18, 2004. Lopez v. Felker, 536 F.Supp.2d 1154, 1157 (C.D. Cal. 2008); Silva v. Swarthout, 2010 WL 3386483 at 2 (E.D. Cal. 2010). In light of the ultimate resolution of this issue, the difference between the dates is not significant.

3

Petitioner did file another state habeas petition, but that one was filed after the statute had run and cannot serve to revive or toll the limitations period. Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001).

In Carey v. Saffold, 536 U.S. 214, 218-21 (2002), the Supreme Court held that the AEDPA statute of limitations is tolled not only between the actual filing and decision on a writ, but also during those periods between filings as a petitioner works his or her way "up the ladder" through higher courts to complete "one full round" of state court review of claims. Id. at 217, 219-20. However, in Evans v. Chavis, 546 U.S. 189,(2006), the Supreme Court directed the federal courts to determine whether a "gap" petition was delayed unreasonably, even when a state court did not deny the petition as untimely. The court suggested that a gap longer than the thirty to sixty days permitted in states with written rules for filing might be reasonable, while six months would not be. Id. at 201. Based on this authority, petitioner is not entitled to tolling for the almost four year gap between the denial of the first petition and the filing of the second.

III. Equitable Tolling

Petitioner argues he is entitled to equitable tolling because of retained counsel's misfeasance; specifically, he claims that counsel failed timely to pursue state court remedies and did not send petitioner his transcripts and file until 2009.[3] He also suggests that he was not aware of the date the superior court had denied the petition until April or May 2009.

To receive equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Holland v. Florida, __ U.S. __, 130 S.Ct. 2549, 2562 (2010). The Ninth Circuit has explained:

---

[3] Petitioner has filed both an opposition to the motion to dismiss and a request for judicial notice, attaching additional documents, following respondent's reply. Although the latter arguably is not appropriately filed in this case, the court will consider these exhibits in resolving the motion.

4

> To apply the doctrine in "extraordinary circumstances" necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances "stood in his way" suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.

Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.), cert. denied, __ U.S. __, 130 S.Ct. 244 (2009) (internal citation omitted); see also Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003) (petitioner must show an external force caused the untimeliness).  It is petitioner's burden to show he is entitled to equitable tolling.  Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026 (9th Cir. 2005).

      A.  Counsel's Misconduct

Attorney miscalculation or negligence "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."  Lawrence v. Florida, 549 U.S. 327, 336-37 (2007); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) ("miscalculation of the limitations period . . . and negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling").  Only "egregious conduct" by an attorney may be grounds for equitable tolling.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

From petitioner's exhibits, it appears that in September, 2002, petitioner's family retained Attorney Victor Haltom to represent petitioner on the direct appeal from his criminal conviction.  Haltom's contract with Ms. Georgette Johnson says that "[i]n the event additional legal services are desired, such as representation in connection with a petition for writ of habeas corpus, and/or a petition for review in the California Supreme Court, it will be necessary for the parties to execute an additional written agreement."  Docket No. 23 at 5.[4]  Petitioner has presented no other agreements relating to any collateral proceedings, whether state or federal.

---

[4] The court relies on the pagination assigned by its ECF system.

5

There is some circumstantial evidence that further representation was contemplated.  For example, in a letter dated August 2, 2004, Haltom informed petitioner that he had filed the habeas petition raising sentencing issues based on <u>Blakeley v. Washington</u>, 542 U.S. 296 (2004) "without calling your family into my office and at no charge to you or your family."  Petition at 73.  He explains that this petition is "not about innocence," and says that he sent his investigator to find someone named Mary Wilson, and tells petitioner he "will be glad to meet with your family to discuss further possibilities in terms of trying to locate Ms. Wilson.  My investigator can continue our efforts in this regard, or, in the alternative, I can give the information we have developed to the Northern California Innocence Project, and we can see if they can come up with anything."  <u>Id</u>. at 72, 73.

Petitioner has provided a letter from Georgette Johnson, dated April 18, 2006, to Haltom, providing information that "the girl who accused Bruce Johnson is now sitting in jail." Docket No. 23 at 18.  In addition, he has included two letters from Investigator John M. Kirkman, who may or may not be the investigator to whom Haltom referred.   In a letter dated March 21, 2007, Kirkman tells petitioner that he gave some information to Haltom about "the recent court decisions, and he will be looking into those to see if they have any effect on your sentencing."  <u>Id</u>. at 14.  Kirkman then outlines his attempts to find Nola Wilson and provides information on Lakeithia Williams's criminal record.  <u>Id</u>.  In another letter, dated September 14, 2008, Kirkman describes his attempts to find "our subject" and his plan to secure her admission that her family forced her to lie about petitioner.  <u>Id</u> at 16.  Beyond these suggestions of a further relationship with Haltom, petitioner has not provided a contract or even his own declaration showing that the family had retained Haltom to pursue state or federal habeas relief.

Petitioner's additional materials do not provide any more illumination on the exact nature of the post-appeal relationship between Haltom and petitioner.   One document is a State Bar form for attorney complaints, unsigned but apparently submitted by Joann Johnson, petitioner's mother, in late December, 2008; Ms. Johnson says that petitioner has complained to

her about the AEDPA time limits, that he wrote a letter to Haltom in December, 2008, asking about the AEDPA time bar, and that she was not informed that Haltom no longer represented petitioner.  Petition at 69-70.  Another is a letter from petitioner to Haltom, dated December 16, 2008, in which petitioner mentions an earlier telephone call of December 2, 2008, and asks, among other things, "to what court or courts were you and your law firm obligated to take my appeals to," whether Haltom notified anyone of the Supreme Court's denial of the petition for review and of "the termination of your services" at the "completion of your obligation," and whether the claims he raised in the California Supreme Court are now time barred under the AEDPA.  Id. at 77.  Petitioner adds that he is "taking a more active role in my case . . . ." Id. Finally, petitioner attaches a copy of his letter to Investigator Kirkman, dated January 16, 2009, asking Kirkman to pursue a number of tasks, which included asking Haltom the questions listed in the letter of December 18, 2008.  Petitioner concludes that "it is time to turn up the heat on this case." Id. at 79-80.  Finally, petitioner has presented a letter from Haltom's office, dated April 28, 2009, listing the materials from the case files which had been sent to petitioner under separate cover.  Docket No. 19 at 9-10.  It is significant that petitioner has not submitted his own declaration about the December, 2008 conversation with Haltom or any declarations from his family members attesting to a further agreement to hire Haltom to prepare a federal habeas petition.

   Based on these records, petitioner argues that this case is much like Spitsyn, where the Ninth Circuit found that retained counsel's misconduct was a sufficient basis for equitable tolling.  The comparison is not warranted.

   In Spitsyn v. Moore, the petitioner's mother retained a lawyer nearly a year before the deadline for filing a federal habeas.  After a period of inactivity, the mother wrote to counsel several times, as did the petitioner himself; counsel did not respond.  345 F.3d at 798.  Finally, the mother complained to the Washington State Bar Association and wrote to counsel, terminating the representation and asking that counsel return the file.  Counsel never filed the

petition and failed to release petitioner's files and records until three months after Spitsyn asked for them and two months after the AEDPA statute of limitations had run. Id. at 799-800. The Ninth Circuit recognized that "where an attorney's conduct is sufficiently egregious, it may constitute an "extraordinary circumstance" warranting equitable tolling of the AEDPA's statute of limitations." Id. at 800. It found that the conduct of Spitsyn's attorney met this standard, because it was "so deficient as to distinguish it from . . . merely negligent performance of counsel. . . ." Id. at 801. The court rejected the respondent's arguments that petitioner could have met the deadline by filing the petition on his own, noting that "without the file, which [counsel] still possessed, it seems unrealistic to expect Spitsyn to prepare and file a meaningful petition on his own within the limitations period." Id.

The Spitsyn court relied on Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003). In that case, within days of his sentencing, the movant asked his wife to hire a lawyer to file what he described as a "2255." With the assistance of a bilingual minister, movant's Spanish-speaking wife hired an attorney, even though the attorney did not appear to know what a 2255 was. Id. at 148. The attorney later told them it was too late to file a motion to vacate the sentence, even though he had almost fourteen months in which to do so. The attorney never met with movant's wife after he received his fee, but accepted the wife's calls and assured her he was taking care of things and waiting for a court date. Counsel filed a motion for modification of sentence to allow movant to be deported and when that was denied as untimely, informed movant there was nothing further to be done. By then, the time for filing a § 2255 motion had passed.

The Second Circuit found that Baldayque was entitled to equitable tolling:

> In spite of being specifically directed by his client's representative to file a "2255," Weinstein failed to file such a petition at all. By refusing to do what was requested by his client on such a fundamental matter, Weinstein violated a basic duty of an attorney to his client.

8

Id. at 152. That, coupled with the facts that the attorney undertook no legal research on movant's behalf and improperly advised his wife that a 2255 would be untimely, established the extraordinary circumstances necessary to justify equitable tolling. Id. The court remanded for a determination of whether Baldayaque had acted with diligence in light of the circumstances. Id. at 153.

In this case, in contrast, petitioner has presented nothing showing that Haltom was retained to pursue state collateral relief, much less to pursue a federal habeas petition. The only contract petitioner proffers shows that his family retained Haltom to represent him on his direct appeal. That document is clear that the agreement and fee does not govern additional services, such as the preparation of a writ of habeas corpus and that should petitioner wish to hire Haltom for such services, an additional contract and fee would be necessary. The record contains no additional contract nor any indication that petitioner's family paid any additional fees beyond the $8000 paid in connection with the direct appeal, even though Haltom invited petitioner and his family to discuss whether he should proceed further with his investigations or simply turn to the Innocence Project. Petn. at 72-73.

The record does show that petitioner and at least one member of his family had some continued dealings with Investigator Kirkman, who was passing some information to Haltom. These letters do not support a finding that Haltom was retained to prepare a state habeas petition, much less a petition to be filed in federal court. At most they suggest that petitioner was confused about the scope of Haltom's representation, not that Haltom willfully ignored what he had been hired to do.

Giving this record a very generous reading, it appears that Haltom may not have advised petitioner about the AEDPA and its deadlines. This, however, is merely negligent and will not support a finding of equitable tolling. Randle v. Crawford, 604 F.3d 1047, 1057-58 (9th Cir. 2010).

1        Petitioner's claim fails for another reason: he has failed to show he was acting
2 diligently in pursuing his rights.  Petitioner claims that "after two years, he began asking serious
3 questions about his case," but this claim is not made under penalty of perjury and is not
4 supported by any documentary evidence to support the unverified claim.  Docket No. 23 at 1-2.
5 Similarly, he claims that he "wrote numerous letters to counsel" but has not provided copies of
6 those letters or even his legal mail log supporting the claim.   Docket No. 19 at 2.   What he has
7 provided shows letters to the investigator in 2007 and 2008, after the statute of limitations had
8 run and no attempt to contact Haltom himself until 2008.
9        Petitioner has not borne his burden of showing counsel's egregious misconduct or
10 of his own diligence.
11    B.   Counsel's Retention Of The Case File
12        Petitioner argues that he is entitled to equitable tolling because counsel "refused to
13 provide him with the necessary case documents."    Docket No. 23 at 2.   He has supported this
14 claim with letters from counsel and from counsel's office, showing that the file was not mailed to
15 him until 2009.   Opp'n. at 9-11.
16        The Ninth Circuit has recognized that a petitioner's separation from his file and
17 transcripts may provide a basis for equitable tolling.  Ramirez v. Yates, 571 F.3d 993, 998 (9th
18 Cir. 2009) (a complete lack of access to a legal file may constitute an extraordinary
19 circumstance); United States v. Battles, 362 F.3d 1195, 1197 (9th Cir. 2004) (equitable tolling
20 may be allowed if counsel withheld transcripts during limitations period).   It is not sufficient to
21 show that he did not have his legal files during the limitations period: petitioner must also show
22 how the lack of access to his file made a timely filing impossible and that he was diligent in
23 seeking his files.  Ramirez at 998.  Petitioner has not made either showing.
24        First, petitioner has not shown it was impossible for him to prepare a basic habeas
25 petition without his files: he does not allege he had not been sent the appellate briefs or superior
26 court petition which could have provided him information sufficient to draft a federal petition.

Second, he has not shown that he was diligent in seeking his files. All his exhibits show that he did not ask for the files and transcripts until December, 2008, at the earliest, when his mother filed a complaint with the California State Bar and he talked to Haltom. Petn. at 69-70, 77. These efforts come too late to demonstrate diligence because by the time petitioner began to take an interest in his case, the statute of limitations had long since run.

   C. <u>Knowledge Of The Superior Court's Action</u>

    Petitioner claims that he did not know "exactly where he stood regarding his case" until April or May, 2009 because Haltom had never informed him of the outcome of the superior court writ. Opp'n. at 2.

    "'[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter." <u>Ramirez</u>, at 997, <u>quoting</u> <u>Woodward v. Williams</u>, 263 F.3d 1135, 1143 (10th Cir. 2001). Once again, for the alleged lack of notice to provide a basis for equitable tolling, petitioner must show (1) the date he actually received notice; (2) that he acted diligently to obtain notice; and (3) that the delay in receiving notice caused the untimeliness of his filing. <u>Ramirez</u>, at 998. Petitioner has not done so in this case.

    Petitioner's claim that he learned the status of his case only in 2009 is belied by the documents he has submitted. In September 2006, he wrote to the Superior Court, asking about the status of the petition; a handwritten note on the letter says "copy of 9-1-05 order mailed 11-7-06." Petn. at 71. Even assuming that petitioner did not learn of the superior court's denial until November, 2006, he let almost three years elapse before he sought habeas relief from the California Supreme Court.

    Moreover, petitioner has not shown that he acted diligently to obtain notice of the denial. He has presented nothing suggesting that either he or his family asked counsel about the pending petition and nothing showing that he sought information from the Superior Court earlier

than he did.  Waiting two years following the filing of a petition to determine whether it has been decided cannot be deemed diligent.   Petitioner is not entitled to equitable tolling.

D.  Request For An Evidentiary Hearing

Petitioner asks for an evidentiary hearing "to reach a fair and legal conclusion in this matter." Opp'n. at 7.  He has presented nothing, however, which suggests that a hearing will allow him to develop information which he is unable to present either through documents or his own declaration.  The request is denied.

Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (docket no. 17) be granted and the petition be dismissed as untimely.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 12, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

sg
john0178.mtd

12